IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LARRY L. JOHNSON                                                                                    PLAINTIFF

v.                                          4:24CV00764-BSM-JTK

FAITH MCJUNKINS, et al.                                                                         DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

**I.      Introduction**

Larry L. Johnson ("Plaintiff") was incarcerated in the Faulkner County Detention Center (the "Detention Center") at the time he filed this lawsuit. (Doc. No. 2 at 4). Plaintiff has since been released from custody. (Doc. No. 18). Only Plaintiff's retaliation claims against Defendants McJunkins, Watkins, and Stracener (collectively, "Defendants") remain pending. (Doc. Nos. 2, 4, 7).

Defendants filed a Motion for Summary Judgment on the issue of exhaustion, Brief in Support, and Statement of Facts. (Doc. Nos. 24-26). On March 10, 2025, the Court directed Plaintiff to respond to Defendants' Motion within thirty (30) days, or by April 9, 2025. (Doc.

No. 27). The Court advised Plaintiff that failure to comply with the Order would result in all of the facts set forth in Defendants' summary judgment papers being deemed admitted, or the dismissal of the action without prejudice for failure to prosecute. (Id.) To date, Plaintiff has not filed a response.

After careful consideration of the record before me and for the reasons explained below, I recommend Defendants' Motion be granted.

## II.     Plaintiff's Claims

Plaintiff's retaliation claims against Defendants remain pending. (Doc. Nos. 2, 4, 7). Plaintiff sued Defendants in their personal and official capacities. (Doc. No. 2 at 1-3). Plaintiff alleges that on August 20, 2024, Defendant Watkins cuffed him so tightly that it cut off circulation in his hands and talked about Plaintiff's charges in front of other inmates in a way that made it appear that Plaintiff was in custody in connection with child molestation. (Id.). Plaintiff asserts Defendant Watkins's actions were in retaliation for a lawsuit Plaintiff filed in this Court on July 31, 2024, Johnson v. Penix, et al., 4:24-cv-00647-JM-JTK. In that action Plaintiff sued Defendants, among others.

On or around August 27, 2024, Lieutenant Paige "called [Plaintiff] out due to the PREA call." (Id. at 6). Plaintiff says he told Lieutenant Paige that Defendant Watkins threatened Plaintiff and his family "due to the lawsuit." (Id.). After Plaintiff told Lieutenant Paige that Plaintiff had paperwork regarding the threats, Plaintiff went to his pod to get the document; Plaintiff was handcuffed at the time and while trying to obtain the document his cuffs tightened and became uncomfortable. (Id.). Plaintiff showed Lieutenant Paige the document and Lieutenant Paige said he would investigate. (Id.). According to Plaintiff, Lieutenant Paige told

him "that the lawsuit was nothing and they had never lost or worried about," and Lieutenant Paige never got back to Plaintiff about the threat. (Doc. No. 2 at 6).

Also on or around August 27, 2024, Defendant McJunkins "started talking about why [Plaintiff] was suing her and how she personally felt about it." (Id.). Then, on or around September 1, 2024, Defendant McJunkins wrote Plaintiff up for "inciting a riot and numerous other charges after she asked [Plaintiff] why did [he] put her in [his] lawsuit." (Id. at 7). On September 4, 2024, Defendant McJunkins threated, in the presence of Officer Thompson, to write Plaintiff up for sexual assault. (Id.). Plaintiff asked Officer Thompson why she allowed Defendant McJunkins to write Plaintiff up knowing the allegations were a lie. (Id.). Officer Thompson responded that "she had to ride with her officer . . . ." (Id.).

Plaintiff alleges that on September 2, 2024, Defendant Stracener shook Plaintiff down and "took things," and on September 3 took additional things, including Plaintiff's blanket. (Doc. No. 2 at 7). On September 6, 2024, Plaintiff told Defendant Stracener that he was harassing Plaintiff. (Id.). Defendant Stracener told Plaintiff he did not care and directed Officer Givens—not a party to this action—to shake Plaintiff down. (Id.).

### III.   Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other

citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."   Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas.   Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

## IV.   Analysis

Defendants argue that Plaintiff failed to exhaust his claims against them.   (Doc. Nos. 24-26).

According to the Prison Litigation Reform Act ("PLRA"),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit.  In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001).   In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette

v. Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000)).  In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original).  Finally, in Jones v. Bock, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007).

At the time of the incidents giving rise to this lawsuit, the Faulkner County Detention Center had in place a grievance procedure that was explained to inmates in the Detention Center Detainee Handbook.  (Doc. No. 26-1 at ¶ 27; Doc. No. 26-4; Doc. No. 26-5).  Pursuant to the grievance policy, detainees have the opportunity to present written grievances without punishment. (Doc. No. 26-4 at 1).  The policy defines "grievance" as "[a]ny written notice of a complaint, request or problem signed by a detainee and delivered to a detention officer."  (Id. at 1).  Any officer may distribute grievance forms; lieutenants answer inmate grievances.  (Id.).  The staff member receiving a grievance from an inmate must signed and date the form.  (Id.).  A grievant is informed in writing of the disposition of the grievance within 10 working days.  (Id.). Emergency grievances receive a response within 48 hours.  (Id.).  The factual basis for the disposition is stated in the response.  (Doc. No. 26-4 at 1).

5

A grievant may appeal "any response or lack of response to the next level in the chain of command, who shall respond in writing." (Id.). All grievances and responses are maintained in the grievant's jail file. (Id.).

The Detention Center's Detainee Handbook explains the grievance process as "a process by which a detainee presents a claim of wrongdoing or alleged violation of their rights to the staff of the" Detention Center. (Doc. No. 26-5 at 1). The grievance procedure identifies matters that cannot be grieved and explains what constitutes abuse of the grievance procedure. (Id. at 2). Pursuant to the procedure, detainees must first try to verbally resolve the problem through the unit officer. (Id. at 1). If unsuccessful, the detainee may file a written grievance within 10 days of the incident or occurrence. (Id.). All grievances and requests are submitted electronically through a kiosk available in each cell or on a grievance form if the kiosk is unavailable or out of order. (Id.). "The grievance may only address one (1) issue or problem and should also state the corrective action" sought. (Id.). Detainees may not file a grievance on the behalf of someone else. (Doc. No. 26-5 at 1).

Grievances generally are answered within 10 days, though an extension in the time needed to investigate the matter may be needed. (Id. at 2). A grievance officer will communicate any extended delay to the detainee. (Id.). A detainee may appeal an answer to a grievance; the appeal must be field within five working days from the detainee's receipt of the answer. (Id.). The jail lieutenant must respond to the appeal within five working days. (Id.). Responses to grievances are available on the kiosk. (Id.).

In support of their Motion, Defendants presented the Affidavit of Christopher Watkins, the Detention Center Administrator and custodian of Detention Center records. (Doc. No. 26-1 at ¶¶ 1-2). According to Mr. Watkins, Plaintiff did not exhaust any retaliation claim raised in this

6

lawsuit.  (Id. at ¶ 7).  Mr. Watkins attached copies of the relevant portions of Plaintiff's jail file to his Affidavit, including requests and grievances that Plaintiff filed.  (Doc. No. 26-1 at ¶¶ 3, 4; Doc. No. 26-3).

Defendants acknowledge that Plaintiff filed multiple requests and grievances during his time at the Detention Center but argue that "none were directed at Faith McJunkins, Cpl. Stracener, or Capt. Watkins raising the alleged acts of retaliation at issue in this case."  (Doc. No. 25 at 9). Defendants further argue that "[n]one of Plaintiff's pre-lawsuit grievances . . . allege that any of the . . . Defendants violated any of Plaintiff's constitutional rights. More specifically, Plaintiff did not file any request, grievance, or appeal complaining that Faith McJunkins, Cpl. Stracener, or Capt. Watkins retaliated against him for filing Johnson I as required by facility policy and federal law before filing suit."  (Id.).  The Court has reviewed Plaintiff's grievances and agrees that none of them exhausted his pending claims in this case.

Plaintiff filed this lawsuit on September 9, 2024.  (Doc. No. 2).  Only grievances that had been appealed by that date would serve to exhaust Plaintiff's claims.

On August 24, 2024, Plaintiff complained: "next time can you be a little more professional about this lawsuit and keep my kids and court date out of this Captain Watkins you scared me." (Doc. No. 26-3 at 14).  Plaintiff filed a second grievance that same day in follow up to the first. (Id.).  Plaintiff alleged that Defendant Watkins threatened him due to the lawsuit, which was enough to put the Detention Center on notice that Plaintiff was claiming retaliation.  There is, however, nothing in the record that indicates that Plaintiff appealed the response to this grievance.

On August 27, 2024, Plaintiff filed another grievance referencing the earlier lawsuit. While Defendant McJunkins is mentioned in that grievance, Plaintiff complained only of Lieutenant Paige's actions in that grievance.  (Id. at 16).  As such, Plaintiff did not exhaust his

7

claims against Defendant Watkins through his August 27, 2024 grievance. Moreover, there is no indication that Plaintiff appealed this grievance.

Plaintiff filed a grievance on September 1, 2024, against Defendant McJunkins alleging she told Plaintiff "a grievance doesn't matter and that it won't affect her so write it up." (Id. at 3). Plaintiff said in the grievance "I believe it[']s got something to do with my lawsuit because she asked me why did I put her on it. Stop trying to oppress me." (Id.). Again, there is nothing in the record indicating that Plaintiff appealed the response to this grievance.

On September 6, 2024, Plaintiff alleged in a grievance that Defendant Stracener shook down Plaintiff's cell and took his property. (Id. at 17). Plaintiff said he fears for his life. (Doc. No. 26-3 at 17). Plaintiff pointed out that Defendant Stracener is "on [Plaintiff's] lawsuit, too." (Id.). Plaintiff made related claims against Defendant Stracener in this case. Once more, there is no record of an appeal.

In his Complaint, Plaintiff indicated that he did not "completely exhaust the grievance(s)" he filed presenting the facts set forth in this lawsuit "by appealing to all levels within the grievance procedure" because "they said I went over my limit in grievances that I have to close, I don't know how." (Doc. No. 2 at 5). But the grievance procedure does not set a limit on the number of appeals a detainee may file. (Doc. No. 26-3). And any additional grievances Plaintiff submitted that mentioned retaliation were filed after Plaintiff commenced this lawsuit. (Id.).

The Court notes that Plaintiff has not filed a response to Defendants' Motion. He has not controverted any material fact set forth by Defendants in their statement of undisputed material facts. Accordingly, all material facts submitted by Defendants (Doc. No. 26) are deemed admitted. Local Rule 56.1(c); FED. R. CIV. P. 56(e).

The Court finds Plaintiff did not exhaust his claims against Defendants. Plaintiff did not meet proof with proof to establish facts in dispute that would preclude summary judgment in Defendants' favor. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Accordingly, the Court recommends Defendants' Motion for Summary Judgment be granted and Plaintiff's claims against Defendants be dismissed without prejudice.

If the Court adopts this Recommendation, all of Plaintiff's claims will have been dismissed. As such, the Court will also recommend that Plaintiff's Complaint be dismissed.

V.   Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment on the issue of exhaustion (Doc. No. 24) be GRANTED.

2. Plaintiff's claims against Defendants be DISMISSED without prejudice for failure to exhaust.

3. Plaintiff's Complaint (Doc. No. 2) be DISMISSED.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal from this Order and the related Judgment would not be taken in good faith.

Dated this 17th day of April, 2025.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE